**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Fenion, Jr., an unmarried man, ) | No. CV 17-460-TUC-LAB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Commissioner of Social Security ) Administration, ) | |
| Defendant. ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 15)

The ALJ's finding that Fenion's back pain is not severe is not supported by substantial evidence and is not free from legal error. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The case is remanded for further proceedings.


PROCEDURAL HISTORY

In August of 2013, Fenion filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 127) He alleged disability beginning on June 26, 2012, due to PTSD (post-traumatic stress disease), depression, and back pain. (Tr. 127,150)

His application was denied initially and upon reconsideration. (Tr. 74-77); (Tr. 81-83) Fenion requested review and appeared with counsel at a hearing before Administrative Law

Judge (ALJ) Myriam Fernandez Rice on December 15, 2015. (Tr. 32) In her decision, dated February 11, 2016, the ALJ found Fenion was not disabled because he has no severe impairments. (Tr. 17-26)

Fenion appealed, but on July 21, 2017, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5) Fenion subsequently filed this action seeking review of that final decision. (Doc. 1)

Claimant's Work History and Medical History

Fenion was 60 years old at the hearing before the ALJ. (Tr. 34) He is a high school graduate. (Tr. 34)

Fenion last worked as a vinyl cutter in a carpet warehouse. (Tr. 34) He hurt his back in 2011 "when he was lifting a very heavy vinyl roll weighing some 300 pounds." (Tr. 292) He received workers compensation that ended in 2012. (Tr. 34) Fenion stated that he suffers from PTSD, and COPD (chronic obstructive pulmonary disease). (Tr. 35) He takes medication for back pain and for depression. (Tr. 36) Fenion explained that he can no longer work because he can no longer perform heavy lifting. (Tr. 37)

*Mental Impairment*

In February of 2014, Raymond Novak, M.D., reviewed the medical record for the disability determination service and offered an opinion of Fenion's mental impairment. (Tr. 56-57) Novak diagnosed Fenion with affective disorder. (Tr. 56) He then evaluated Novak's "B" listing criteria, which gauge the severity of his limitations. *See* 20 C.F.R. § 404.1520a(c)(3). Novak found Fenion has no restrictions of his daily activities; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and no evidence of decompensation. (Tr. 56) Novak further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of his mental impairment. (Tr. 56) Novak concluded that Fenion's mental impairment is non-severe. (Tr. 57)

In August of 2014, Jaine Foster-Valdez, Ph.D., reviewed the medical record for the disability determination service and offered a second opinion of Fenion's mental impairment. (Tr. 68) Foster-Valdez agreed with the assessment provided by Novak. *Id.*

In January of 2014, Fenion was examined by Gwendolyn W. Johnson, Ph.D., for the disability determination services. (Tr. 303) Johnson diagnosed Fenion with depressive disorder resulting from chronic health problems. (Tr. 305) She opined that his "prognosis for a successful return to the work force is estimated as good." (Tr. 305) Johnson concluded that Fenion's mental impairment was not severe. (Tr. 306)

*Physical Impairment*

In August of 2011, Fenion underwent an MRI examination of his lumbar spine. (Tr. 317-318) Mild to moderate disc bulge was observed at the L2-3 position. *Id.* Mild disc bulging was observed at the L3-4, L4-5, and L5-A1 positions. *Id.*

In March of 2012, Fenion underwent an extensive functional capacity evaluation at the Center for Career Evaluations. (Tr. 704-732) Susan Ito, RPT, explained that "Mr. Fenion's safe maximal lifting capacity is 10 lbs. He is unable to tolerate sitting/standing or walking for more than 10 minutes." (Tr. 706)

In April of 2012, Fenion's treating physician, John Giddens, M.D., completed a Primary Treating Physicians Permanent and Stationary Report in connection with his workman's compensation claim. (Tr. 356-358) The form instructions explain that it should be completed "once the patient's condition becomes permanent and stationary." (Tr. 352) In the Functional Capacity Assessment section, Giddens marked "50 pounds or more" under the "Frequent Lift and/or Carry" section. (Tr. 357) He marked "Unlimited" in the "Stand and/or Walk" section and the "Sit" section. (Tr. 357) He marked "Unlimited" in the "Push and/or Pull" section. *Id.* Under "Activities Allowed" he marked "Occasionally" for Stooping and Crouching, and he marked "Frequently" for all other listed activities. (Tr. 357)

In the narrative section, however, Giddens stated that "Mr. Fenion cannot bend or stoop repetitively. He should not kneel or squat, and must be able to alternate sitting and standing

- 3 -

positions. He cannot lift, push, or pull greater than 10 pounds at [a] time." (Tr. 357-358) This statement is entirely contrary[1] to the evaluation given in the Functional Capacity Assessment section. The ALJ therefore gave Giddens' opinion little weight. (Tr. 21)

In January of 2014, Fenion was examined by Jerome Rothbaum, M.D., for the disability determination services. (Tr. 292) Rothbaum noted that, "[t]he claimant's chief complaints and allegations are problems with his back." (Tr. 292) He "currently has difficulty with prolonged walking, prolonged standing and difficulty at times standing straight up." (Tr. 292) He takes trazodone (for depression), venlafaxine (for depression and anxiety), gabapentin (for nerve disorder), hydrochlorothiazide (for high blood pressure), and simvastain (for high cholesterol). (Tr. 293) Rothbaum's impression was "low back pain, possible left lumbar radiculopathy," nicotine abuse, probable early COPD, depression/PTSD, and history of alcohol abuse. (Tr. 295) Rothbaum opined that Fenion could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 295-96) He could stand and/or walk at least 2 hours but less than 6 hours in an 8-hour day. (Tr. 296) He could sit 4-5 hours in an 8-hour day. (Tr. 296) He should shift positions after 45 minutes (Tr. 296) He should never stoop and should only occasionally climb ramp/stairs, kneel, crouch, or crawl. (Tr. 297) He is restricted from working around heights or moving machinery. (Tr. 297)

Also in January of 2014, Charles Combs, M.D., reviewed the medical records for the disability determination service and offered an opinion of Fenion's physical limitations. (Tr. 55) Combs opined that Fenion's back pain was non-severe. *Id.*

In August of 2014, Vivienne J. Kattapong, M.D., reviewed the medical records for the disability determination service and offered an opinion of Fenion's physical limitations. (Tr. 67) Kattapong agreed with the assessment previously provided by Combs. *Id*.

*Hearing*

---

[1] It is unclear why Giddens' evaluation contains this marked inconsistency. It is possible that he used the "Functional Capacity Assessment" section to describe the requirements of Fenion's job rather than Fenion's current abilities.

- 4 -

On December 15, 2015, Fenion appeared with counsel at a hearing before ALJ Rice. (Tr. 32) Fenion testified that he was 60 years old and a high school graduate. (Tr. 34) In 2012, he was working as a vinyl cutter in a carpet warehouse when he hurt his back lifting a 300 pound roll of vinyl. (Tr. 34) He received workers' compensation benefits that ended in 2012. (Tr. 34)

Fenion received treatment including injections for his back when he injured it, but when he moved here, he had difficulty getting treatment from the VA. (Tr. 34-35) He was treated in the emergency room for acute chronic lower back pain in August of 2015. (Tr. 960) Since then, he has been receiving further therapy. (Tr. 35)

Fenion testified that, in addition to his back problems he has post stress syndrome and COPD. (Tr. 35) He cannot work because he cannot do heavy lifting. (Tr. 37)

On a typical day he gets up at 7:00 a.m., goes outside, walks a little bit, watches TV, and stretches his back. (Tr. 38) He mops the floor and does light cleaning. *Id*. He tries to do yard work, but he says "it tears my back up." (Tr. 38) Carrying two gallons of milk from the store pulls his back. (Tr. 38) He uses a cane now. (Tr. 39) Fenion underwent vocational testing and found he can lift only 10 pounds without pain. (Tr. 40) He can walk for 10 minutes. (Tr. 41) He can sit for 10 minutes before he must move around. (Tr. 41) Without medication his back pain is eight out of ten. (Tr. 42) With medication, it is a six. (Tr. 42-43) He takes tramadol for pain, but not all the time because it is addictive. (Tr. 43)

Kathleen McAlpine testified as a vocational expert. (Tr. 43) She testified that Fenion's work as a linoleum cutter is classified as heavy work, DOT # 929.381-010. (Tr. 45); *see also* Dictionary of Occupational Titles, www.govtusa.com/dot/ Fenion also worked as a hand packager, which is medium work, DOT # 920.587-018. (Tr. 46) McAlpine testified that a hypothetical individual who could perform medium work and who should avoid concentrated exposure to fumes, dust and gases could work as a hand packager. (Tr. 47)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step

requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes that the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[2] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

The ALJ's Findings

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

1       At step one of the disability analysis, the ALJ found Fenion "has not engaged in substantial gainful activity since June 26, 2012, the alleged onset date. . . ." (Tr. 19)

      At step two, she found Fenion "has the following medically determinable impairments: degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disease; hypertension; major depressive disorder; and anxiety . . . ." (Tr. 19) She further found that, "[t]he claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments. . . ." (Tr. 20) Consequently, the ALJ found Fenion was not disabled. (Tr. 26)

STANDARD OF REVIEW

      To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

      The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, she must justify her decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

"If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." *Valentine*, 574 F.3d at 693. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id.* "In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]." *Id.*

Discussion

In this case, the ALJ found at step two of the disability analysis that Fenion had no severe impairments and therefore was not disabled. Fenion challenges this step two finding specifically as it relates to his back pain, which he argues is a severe impairment. He further argues that the ALJ improperly discounted the opinion of the examining physician in favor of the opinion of the non-examining state agency physicians, who opined that his back pain was not severe. The court agrees with Fenion.

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir.1996). "[A]n impairment is not severe if it does not significantly limit the claimant's physical ability to do basic work activities." *Id.* at 1290. "Basic work activities" are "the abilities and aptitudes necessary to do most jobs" such as

- 8 -

1  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20
2  C.F.R. § 404.1521(b). "[T]he ALJ must consider the combined effect of all of the claimant's
3  impairments on her ability to function, without regard to whether each alone was sufficiently
4  severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (punctuation modified).

The ALJ found that Fenion's back pain was not severe by relying on the opinion of the non-examining physicians. Their opinion was contrary to the opinion of the examining physician, Rothbaum, who opined that Fenion's back pain limited him to a subset of light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . ."). The ALJ improperly discounted Rothbaum's opinion.

The Commissioner recognizes a hierarchy of doctors depending on how much time they spend with the claimant. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen*, 80 F.3d at 1285. The Commissioner may reject the treating physician's uncontradicted opinion only if she sets forth "clear and convincing" reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996); *Magallanes*, 881 F.2d at 751. If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if she provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester,* 81 F.3d at 830 (punctuation modified).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,

even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. In this case, the opinion of the examining doctor, Rothbaum, was contradicted by the opinions of the non-examining physicians, Combs and Kattapong. The ALJ may discount Rothbaum's opinion only if she provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*.

The ALJ analyzed Rothbaum's opinion as follows:

> I accord Dr. Rothbaum's opinion some weight to the extent it is consistent with the preponderance of the evidence. He is an acceptable medical source and based his opinion on an objective physical examination that included strength and range of motion testing, as well as clinical observations of the claimant's ability to perform basic movements and activities. However, his conclusions concerning the claimant's exertional and non-exertional physical capacity and limitations are inconsistent with his objective findings. Specifically, Dr. Rothbaum found intact sensation, slightly diminished strength in the left lower extremities and positive straight leg raises on the left (Exhibit 3F/3). However, he was able to find no anatomic abnormality and no direct tenderness to explain those deficits and in identifying possible left lumbar radiculopathy, he specifically noted that the pattern of radiation to the leg was atypical (Exhibit 3F/3). Additionally, he observed the claimant was able to dress and undress without difficulty, was able to sit in a chair, and put on, take off, and tie his shoes without difficulty, and was able to squat normally, walk normally, and get on and off the examination table normally (Exhibit 3F/3). Furthermore, his findings and conclusions are inconsistent with the medical treatment evidence discussed in the body of this decision, which shows limited and conservative treatment for low back pain during the period at issue.

(Tr. 24) The ALJ discounted Rothbaum's opinion because "his conclusions . . . are inconsistent with his objective findings." For example Rothbaum noted that while Fenion had "intact sensation, sightly diminished strength in the left lower extremities and positive straight leg raises on the left" he was "able to find no anatomic abnormality and no direct tenderness to explain those deficits and in identifying possible left lumbar radiculopathy, he specifically noted that the pattern of radiation to the leg was atypical." (Tr. 24) He noted that Fenion "was able to dress and undress without difficulty" and could "squat normally, walk normally, and get on and off the examination table normally." *Id*. The ALJ asserts that these findings are inconsistent with Rothbaum's conclusion that Fenion is limited to lifting 20 pounds occasionally and 10 pounds frequently.

- 10 -

The ALJ, however, is not a doctor. If she believes that these medical findings are inconsistent with Rothbaum's opinions as to Fenion's functional limitations she must explain why that is so and provide support for her conclusions. She did not do so here. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ who is not qualified as a medical expert may not make her own assessment as to the claimant's physical condition.); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985); *Liskowitz v. Astrue*, 559 F.3d 736, 741(7th Cir. 2009); *see*, *e.g.*, *Cox v. Colvin*, 2014 WL 6882390, 5 (C.D.Cal. 2014) ("Absent expert medical assistance, the ALJ could not competently translate the medical evidence into a residual functional capacity assessment.").

It is possible that the ALJ simply adopted the opinion of Combs, the non-examining medical expert. Combs noted in his report that "CE reported subjective c\o paralumbar area pain but no direct tenderness elicited; able to sit put on and ties shoes, squat, walk normally and get up/down from exam table. . . ." (Doc. 55) Apparently Combs believed that these observations were inconsistent with Rothbaum's opinions as to Fenion's functional limitations. But if the ALJ found Combs' opinion more persuasive, she did not explain why. After all, Rothbaum was the examining physician, and Combs was the non-examining consultant. All things being equal, Rothbaum's opinion should be given greater weight. The fact that the non-examining consultant disagrees with the examining physician is significant in that it changes the deference that the ALJ must pay the examining physician. If there is a disagreement, the ALJ need only provide specific and legitimate reasons if she wants to discount the opinion of the examining physician rather than clear and convincing reasons. But the fact that the non-examining physician disagrees with the examining physician is not a specific and legitimate reason all by itself.

The ALJ also discounted Rothbaum's opinion because it is inconsistent "with the medical treatment evidence discussed in the body of this decision, which shows limited and conservative treatment for low back pain during the period at issue." (Tr. 24) The ALJ does not explain why she characterizes Fenion's treatment as "limited and conservative." The Ninth

Circuit has said that treatment limited to over-the-counter medication could be reasonably considered "conservative," but Fenion is being treated with a prescription painkiller. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.2007).

Moreover, the ALJ fails to explain why Fenion's "limited and conservative treatment" is inconsistent with Rothbaum's opinion. As the court noted above, the ALJ is not a doctor. If she believes Fenion's level of treatment is inappropriate for someone with the limitations described by Rothbaum, she must support her assertion with medical evidence. She did not do so here.

The ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" to discount Rothbaum's opinions. Her reliance on the opinions of the non-examining physicians, who opined that Fenion's back pain is not severe, was error.

Elsewhere in the opinion, the ALJ provides further rationale for her conclusion that Fenion's back pain is not severe. She states that "the claimant has not sought treatment for back pain on a consistent basis since the alleged onset date and has reported relief in pain with compliant medication management." (Tr. 22) She opines that his pain "is not as severe or limiting as he alleges." (Tr. 22) She then concludes that his degenerative disc disease is not a severe impairment. (Tr. 22-23)

A claimant's unexplained failure to seek treatment on a consistent basis is a legitimate reason for discounting the claimant's allegation of disabling pain. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). In this case, Fenion did explain why the treatment record is not consistent. Fenion testified that he tried to get help for his back, but he had difficulty getting treatment from the VA (U.S. Department of Veterans Affairs). (Tr. 35) He was able to secure this help only after his pain got so bad that he had to seek help from a hospital's emergency department. *Id*. It is therefore understandable why the record of treatment is inconsistent.

If a claimant reports significant pain reduction with medication, that also could be a legitimate reason for discounting the claimant's allegation of disabling pain. Here, however, the record is not so clear cut. Fenion reports that he gets significant relief from tramadol. (Tr.

43) When he uses it, he says it reduces his pain from an eight to a six; presumably he means a six out of ten. (Tr. 42-43) Tramadol, however, is a powerful narcotic-like analgesic, and he cannot use it on a continual basis because it is addictive. (Tr. 43) Fenion reports significant pain reduction with this medication but his pain reduction is not available on a continuing basis.

The ALJ's stated reasons for discounting Fenion's allegation of disabling pain are not supported by the medical record. More importantly, they do not support her ultimate conclusion that Fenion's back pain is not a severe impairment.

A person who seeks treatment on an inconsistent basis probably has a less severe impairment than a person who seeks treatment consistently. But the fact that a person seeks treatment inconsistently is not evidence that the person has only "a slight abnormality that has no more than a minimal effect on an individual's ability to work." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996) (punctuation modified) Presumably a person with only a slight abnormality would not seek treatment at all. Presumably a person with only a slight abnormality would not be prescribed tramadol, which is a "narcotic-like pain reliever . . . used to treat moderate to severe pain." (Tr. 43); *Baylis v. Colvin*, 2016 WL 3031776, at *5, n. 3 (C.D. Cal. 2016); *see, e.g., Cowains v. Astrue*, 2012 WL 3779076, at *4 (C.D. Cal. 2012) ("Indeed, it would seem that a prescription for psychotropic medication might indicate the existence of a 'severe' impairment.").

The ALJ's finding that Fenion's back pain is not severe is not supported by substantial evidence and is not free from legal error. Accordingly,

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for further administrative proceedings.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 4th day of June, 2018.

*Leslie A. Bowman*

Leslie A. Bowman
United States Magistrate Judge

- 13 -